# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-94

**IN RE: ELLA EVANS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 102381-E
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and J. David Painter, Judges.

**AFFIRMED.**

### COOKS J. DISSENTS AND ASSIGNS
### WRITTEN REASONS

**Marc W. Judice**
**P. O. Box 51769**
**Lafayette, LA 70505-1769**
**Counsel for Plaintiff Appellee:**
    **Dr. Alberto Palmiano**

**Jo Ann Nixon**
**129 W. Pershing St.**
**New Iberia, La 70560**
**Counsel for Defendant Appellant:**
    **Ella Evans**

**PAINTER, J.**

Plaintiff, Ella Evans, filed a request for the formation of a Medical Review Panel with the Division of Administration, relative to her claims against Dr. Alberto Palmiano. Dr. Palmiano filed an exception of prescription in the Sixteenth Judicial District Court. The trial court granted said exception and Plaintiff appealed. Finding no manifest error in the factual determinations of the trial court, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The basic facts of this case are not in dispute. On September 16, 2002, Ella Evans was admitted to the Intensive Care Unit at Iberia General Hospital after being found unconscious by her boyfriend. Dr. Alberto Palmiano, a general practitioner, was consulted the same day. While hospitalized, Ms. Evans, who was diabetic, developed severe bed sores, which were described as stage II as early as September 20, 2002, due to the failure of hospital personnel to turn her properly while she was unconscious.[1] On September 25, 2002, Ms. Evans was discharged by Dr. Palmiano. However, on October 9, 2002, Ms. Evans was admitted to University Medical Center in Lafayette, Louisiana with infected bed sores.

Plaintiff admits that her claim against Dr. Palmiano was erroneously filed with the Patient's Compensation Fund (PCF), rather than the Division of Administration, on September 25, 2003. Plaintiff's letter request for the formation of a Medical Review Panel was returned to her and ultimately filed with the Division of Administration on October 7, 2003.

In her request for a Medical Review Panel, Plaintiff alleged that Dr. Palmiano discharged her with bed sores that failed to heal and became infected. She further

---

[1] Plaintiff's claims against the hospital were compromised prior to her request for the formation of a Medical Review Panel relative to her claims against Dr. Palmiano.

alleged that she should not have been discharged but, if discharge was necessary, she should have been given follow-up visits or some other care instructions.

Defendant filed a Petition for the Institution of Discovery in the district court and propounded interrogatories to Plaintiff. In response to an interrogatory asking when she became aware that the bed sores were infected, Plaintiff responded that she was aware that the bed sores were infected upon her discharge from the hospital on September 25, 2002. Based on this response, Defendant filed an Exception of Prescription. Plaintiff opposed this exception and filed her affidavit in which she averred that she attempted to care for her bed sores after her discharge by Dr. Palmiano but was unsuccessful in so doing and was admitted to a different hospital on October 9, 2002, at which time she was informed that she should have received specific aftercare instructions including a return appointment because of her diabetic condition. According to Plaintiff, her claim would not prescribe until October 9, 2003. The trial court disagreed and made a factual finding that she was aware that there was a problem with her discharge on September 25, 2002 and prescription began to run at that time. Accordingly, the trial court entered judgment granting the Defendant's Exception of Prescription and dismissing Plaintiff's PCF Complaint Number 2003-1729. Plaintiff now appeals asserting that she did not become aware of Dr. Palmiano's alleged substandard treatment of her until her re-admission to the hospital on October 9, 2002.

## DISCUSSION

Louisiana Revised Statute 9:5628 governs prescription in a medical malpractice action. This statute provides, in pertinent part, as follows:

A. No action for damages for injury or death against any physician . . . , whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of

2

discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Further, prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Bailey v. Khoury*, 04-0620, p. 11 (La.1/20/05), 891 So.2d 1268, 1276, *citing Campo v. Correa*, 01-2707, p. 11 (La.6/21/02), 828 So.2d 502, 510.

A patient's claim of medical malpractice must be filed with the Division of Administration, and the filing of a request for review of malpractice claim "with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription." La.R.S. 40:1299.47(A)(2)(a). Medical malpractice plaintiffs have been required to file their claims with the Division of Administration since August 15, 1997; however, prior to the amendment of La.R.S. 40:1299.47(A)(2)(b) on April 18, 2002 which deleted references to "the board" and replaced them with "the division of administration," several cases held that if a request for review of a medical malpractice claim was received by or mailed to the Patient's Compensation Fund Oversight Board or the Commissioner of Administration, it would be deemed filed with the Division of Administration as required by La.R.S. 40:1299.47(A)(2)(a) for the purposes of suspension or interruption of prescription. *See Patty v. Christus Health Northern Louisiana*, 34,871 (La.App. 2 Cir. 8/22/01), 794 So.2d 124, *writ denied*, 01-2651 (La. 10/26/01), 802 So.2d 1253; and *In Re Woods*, 02-685 (La.App. 5 Cir. 12/30/02), 836 So.2d 512, *writ denied*, 03-0277 (La. 4/4/03), 840 So.2d 1216.

In this instance, Plaintiff admits that she erroneously filed with the PCF, rather than with the Division of Administration, on September 25, 2003 and makes no argument that said filing interrupted the running of prescriptions. Instead, she argues

3

that she did not have knowledge that her discharge was inappropriate until October 9, 2002 when she was admitted to University Medical Center such that prescription would not run until October 9, 2003 and her filing with the Division of Administration was timely. We disagree.

In reviewing a trial court's decision on a plea of prescription, the Louisiana Supreme Court has recently stated:

> Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. *Campo v. Correa*, 01-2707, p. 7 (La.6/21/02), 828 So.2d 502, 508. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Campo*, 01-2707 at p. 7, 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La.1993). If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Stobart v. State, Through DOTD*, 617 So.2d 880, 882 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id*. at 882-83.

*Carter v. Haygood*, 04-0646, pp. 8-9 (La. 1/19/05), 892 So.2d 1261, 1267.

In this case, we find that the burden shifted to Plaintiff to show that her action had not prescribed since it appears from the face of her letter request that the date of the alleged malpractice was September 25, 2002 and her claim was not properly filed until October 7, 2003. In the letter request, Plaintiff made no allegation that she did not discover the malpractice that allegedly occurred on September 25, 2002 until some later date. However, on this appeal, without saying so explicitly, Plaintiff attempts to invoke the doctrine of *contra non valentem*, a Louisiana jurisprudential doctrine which is applied to prevent the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is

4

not known or reasonable knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Carter*, 892 So.2d at 1268, *citing Plaquemines Parish Com'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034 (La.1987). From these four possibilities, only the fourth one might be applicable to the facts of this case; however, for the following reasons, we find that doctrine of *contra non valentem* is inapplicable to interrupt the running of prescription in this case.

Plaintiff did not testify at the trial of the exception and the only evidence introduced on her behalf was her own affidavit, which stated:

> She was discharged from the hospital on September 25, 2002 by Dr. Alberto Palmiano without any after care instructions or return appointment. Affiant further states that she attempted to care for the bedsores she developed while in the hospital and was unsuccessful in doing so. She was therefore admitted to University Medical Center on October 9, 2002 due to problems with these bedsores. At that time, she was informed that she should have received specific aftercare instructions including a return appointment because of her diabetic condition.

This affidavit does not explain or refute Plaintiff's answers to interrogatories wherein she stated that she knew her bedsores were infected at the time of her discharge on September 25, 2002. Further, it does not explain or refute her answer to another interrogatory wherein she states that Dr. Palmiano failed to properly discharge and/or follow-up with her because he failed to administer care to the bedsores "even after several complaints from myself and others." Both answers indicate a reasonable basis for the finding that on September 25, 2002, Plaintiff had actual or constructive knowledge of facts indicating that she was the victim of a tort.

Based on our review of the record in its entirety, we cannot say that the trial court committed manifest error in its factual finding that Plaintiff had knowledge of the alleged malpractice upon her discharge on September 25, 2002. Because the factual findings of the trial court are reasonable, we affirm the dismissal of Plaintiff's claim.

5

**DECREE**

For all of the foregoing reasons, we affirm the trial court's factual findings with respect to the date on which Plaintiff had knowledge of the alleged malpractice. Accordingly, the trial court's dismissal of PCF Claim Number 2003-1729 is affirmed. Costs of this appeal are assessed to Plaintiff, Ella Evans.

**AFFIRMED.**

IN RE:  ELLA EVANS

COOKS, J., dissenting:

Plaintiff does not allege she was the victim of a single act of malpractice.  The facts clearly disclose during plaintiff's stay at the hospital, she developed severe bed sores as a result of the hospital personnel's alleged failure to properly turn her while she was unconscious.  Her claim for the injuries she sustained as a result of this conduct was timely asserted against the hospital and settled prior to the filing of her claim against Dr. Palmiano.  When she was discharged from the hospital on September 25, 2002, plaintiff had knowledge that the hospital personnel neglected to care for her properly and caused her bed sores to develop.  By this date plaintiff had sufficient knowledge of the alleged malpractice of the hospital and prescription on her claim against it started to run.

The majority makes much to do about the fact that she later declared in answer to interrogatories that she knew the bed sores were infected at the time of her September 25, 2002 discharge; and, *ipso*, this knowledge was sufficient to start the running of prescription on her claim against Dr. Palmiano.  A fair reading of plaintiff's affidavit and petition indicates that Dr. Palmiano's alleged negligence occurred subsequent to that committed by the hospital's personnel.  She contends that Dr. Palmiano discharged her without any aftercare instructions or return appointment; and, as a result, she sustained an aggravation of her pre-existing condition because she was unable to properly care for her bed sores.  She was not aware that he committed a separate act of malpractice until she was admitted to University Medical

Center on October 9, 2002 and informed that the doctor should have provided her with specific aftercare instructions and scheduled a follow-up appointment.

There is no evidence that plaintiff, at the time of her discharge on September 25, 2002, possessed any special knowledge to alert her that the doctor may have had a professional duty to provide her such instruction on discharge and to schedule a follow-up appointment, particularly considering that she was a diabetic. Plaintiff's knowledge on the date of her discharge was only sufficient to alert her that she had a possible claim against the hospital. For this reason, I believe prescription on her claim against Dr. Palmiano did not begin to run until October 9, 2002.