DAVID DEFELICE, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR
SON, PASCAL HONDROULIS, AND
KATIE HONDROULIS

VERSUS

FEDERATED NATIONAL INSURANCE
COMPANY, ENVIRO-CLEAN SERVICES,
INC., AND KNIGHT BUILDING
INSPECTION SERVICES, L.L.C.

NO. 18-CA-374

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 774-278, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

July 09, 2019

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED IN PART;**
**REVERSED IN PART; REMANDED**
    **HJL**
    **JJM**

**WINDHORST, J., CONCURS IN PART AND**
**DISSENTS IN PART WITH REASONS**
    **SJW**

COUNSEL FOR PLAINTIFF/APPELLANT,
DAVID DEFELICE, INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON,
PASCAL HONDROULIS, AND KATIE HONDROULIS

    Galen M. Hair
    David P. Vicknair
    Sarah M. Kalis
    Kassie Lee Richbourg

COUNSEL FOR DEFENDANT/APPELLEE,
ENVIRO-CLEAN SERVICES, INC.

    Elton F. Duncan, III
    Kelley A. Sevin

**LILJEBERG, J.**

Plaintiffs, David DeFelice, individually and on behalf of his minor son, Pascal Hondroulis, and Katie Hondroulis, appeal the trial court's judgment, granting an exception of prescription filed by defendant, Enviro-Clean Services, Inc. ("ECS"), and dismissing plaintiffs' claims against it. For the following reasons, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Mr. DeFelice is the owner of the property located at 3709 Green Acres Road in Metairie, Louisiana. He and Ms. Hondroulis were residing in the home when, on June 10, 2016, the house sustained water damage due to an overflowing drain caused by clogged plumbing. According to Mr. DeFelice, he contacted a plumber, who came to the property and discovered mold while working in the house. Mr. DeFelice contacted his homeowner's insurer, Federated National Insurance Company ("Federated"), and notified them of the water damage and the plumber's discovery of mold in the house.

At the request of Federated, ECS, a mold remediation and mitigation company, evaluated the damage to Mr. DeFelice's house on June 22, 2016. Mr. DeFelice asserts that a representative of ECS, Charlie Barbo, verbally assured him that the house was "safe" to occupy. On that same day, a mold inspector from Knight Building Services, L.L.C. ("Knight") came to the property and collected various samples to test for mold. Knight issued a report of its findings on the following day, June 23, 2016.

In its June 23, 2016 report, Knight indicated that it completed a visual, physical, and indoor environmental quality evaluation of the property and that "[t]he results of this investigation indicate that professional remediation may be necessary at this time." The report indicated that there was mold contamination

from failed plumbing at the location of a bathroom toilet and confirmed microbial growth at a kitchen cabinet. More specifically, the report indicated that concern should arise at "MODERATE" levels; that "LOW" levels of aspergillus/penicillium and total fungi were found; and that surface swabs collected at visible microbial growth showed a "HIGH" level of aspergillus/penicillium mold spores "growing opportunistically" in a water-damaged base cabinet in the kitchen. It noted that while airborne levels of aspergillus/penicillium were not present at levels of concern, "the current site conditions present may indicate a larger hidden mold reservoir concluding possible unobserved suspect amplification or air-borne indoor air quality issues are present."

The Knight report also recommended that the issues in the report be addressed to minimize future problems and that "personnel trained in the handling of hazardous materials or a Licensed Mold Remediation Contractor be contacted to discuss the proper protocol for removing and treating affected materials and evaluating any further damage." In a section of the report entitled, "Building & Health," Knight indicated that "[t]he presence of certain mold and mold spores in buildings and housing can result in mild to severe health effects in humans and can deteriorate the structure of the dwelling resulting in content or structural damage."

After receiving the Knight report on June 23, 2016, Mr. DeFelice and Ms. Hondroulis continued to live in the home. On August 16, 2016, Ms. Hondroulis gave birth to a son, Pascal. Shortly after he began residing the home, Pascal developed breathing issues, which his doctors were initially unable to diagnose. On December 23, 2016, Pascal's pediatrician diagnosed him with bronchiolitis. Plaintiffs contend that it was not until Pascal's diagnosis that they first began to suspect that the mold in the house was not "safe" and may have caused his health issues. They vacated the premises on January 1, 2017.

On July 24, 2017, Mr. DeFelice and Ms. Hondroulis filed this lawsuit against Federated, ECS, and Knight, and they filed a First Amended Petition on August 10, 2017, setting forth several claims. Their claims against ECS include claims based on negligence, intentional or negligent misrepresentation, detrimental reliance, and unfair trade practices. In their petitions, plaintiffs allege that when ECS visited and evaluated the property, a representative of ECS verbally assured Mr. DeFelice that the house was "safe" to occupy. They claim that they suffered "damage to person and property" due to their reliance on ECS's misrepresentation. They also assert that ECS is liable for damages due to unfair trade practices and for "mental anguish as a result of the property damage." Plaintiffs seek to recover for property damage, loss of property value, loss of use of property, mental anguish, emotional distress, and "other damages which will be shown at trial."

On November 9, 2017, ECS filed a Peremptory Exception of Prescription. After a hearing on March 5, 2018, the trial court granted the exception and dismissed plaintiffs' claims against ECS. The trial court found that plaintiffs' claims against ECS were prescribed because prescription began to run on June 23, 2016, when plaintiffs received the Knight report, and they did not file suit until more than one year later on July 24, 2017. In its reasons for judgment, the trial court noted that the Knight report warned of the health ramifications of remaining in a house with mold and recommended that Mr. DeFelice retain a professional licensed contractor to perform mold remediation. The trial court also noted that in his testimony at the hearing on the exception of prescription, Mr. DeFelice acknowledged that the Knight report alerted him to the presence of mold in the

house and that some damage in the house was "too severe to salvage." Plaintiffs appeal.

## LAW AND DISCUSSION

On appeal, plaintiffs contend that the trial court manifestly erred by granting ECS's exception of prescription. They argue that the trial court incorrectly found that the prescriptive period began to run when plaintiffs received the Knight report on June 23, 2016. They assert that prescription should have begun to accrue when Pascal was diagnosed with bronchiolitis in December 2016, or at the earliest, when Pascal began exhibiting symptoms of mold exposure after he was born in August of 2016.

The standard of review of a trial court's ruling on a peremptory exception of prescription turns on whether evidence is introduced. *Wells Fargo Financial Louisiana, Inc. v. Galloway*, 17-413 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800. When no evidence is introduced, appellate courts review judgments sustaining an exception of prescription *de novo*, accepting the facts alleged in the petition as true. Id. *Lennie v. Exxon Mobil Corporation*, 17-204 (La. App. 5 Cir. 6/27/18), 251 So.3d 637, 642, *writ denied*, 18-1435 (La. 11/20/18), 256 So.3d 994. However, when evidence is introduced at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard. *Id.*; *Tenorio v. Exxon Mobil Corp.*, 14-814 (La. App. 5 Cir. 4/15/15), 170 So.3d 269, 273, *writ denied*, 15-1145 (La. 9/18/15), 178 So.3d 149. When evidence is introduced but the case involves only the determination of a legal issue, not a dispute regarding material facts, an appellate court must review the issue *de novo*, giving no deference to the trial court's legal determination. *Wells Fargo*, 231 So.3d at 800; *Cawley v. National Fire & Marine Ins. Co.*, 10-2095 (La. App. 1 Cir 5/6/11), 65 So.3d 235, 237.

Ordinarily, the party urging prescription bears the burden of proving that the cause of action has prescribed. *Vicari v. Window World, Inc.*, 14-870 (La. App. 5 Cir. 5/28/15), 171 So.3d 425, 435, *writ denied*, 15-1269 (La. 9/25/15), 178 So.3d 570. However, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Id.* Prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be enforced. *Allday v. Newpark Square 1 Office Condo. Assn., Inc.*, 12-577 (La. App. 5 Cir. 3/13/13), 113 So.3d 346, 348.

In the present case, the claims asserted by plaintiffs in their original and amended petitions are delictual actions. La. C.C.P. art. 3492 provides that delictual actions are subject to a liberative prescription of one year, which runs from the date the injury or damage is sustained. Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502, 510. Constructive knowledge is "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at 510-611. It is well-settled that "prescription cannot run against a cause of action that has not accrued or while that cause of action cannot be exercised." *Bailey v. Khoury*, 04-0620 (La. 1/20/05), 891 So.2d 1268, 1275.

In the present case, the trial court found that prescription began to run on June 23, 2016 as to all of plaintiffs' claims, including Mr. DeFelice's claims on behalf of the minor child and the individual claims of Mr. DeFelice and Ms. Hondroulis. Given the applicable law, we find it necessary to consider the prescription issue separately as to the claims on behalf of the minor child, the individual claims of Mr. DeFelice and Ms. Hondroulis related to Pascal's health issues, and the individual claims of Mr. DeFelice and Ms. Hondroulis that are not related to Pascal's health.

*Claims on Behalf of the Minor Child*

On appeal, plaintiffs argue that the trial court erroneously found that prescription began to commence as to claims on Pascal's behalf prior to his birth. They assert that they were unaware that the mold in their home caused any medical issues for their child until he was diagnosed with bronchiolitis in December of 2016. They contend that, at a minimum, plaintiffs could not have had actual or constructive notice of Pascal's damages until he was born and started having breathing difficulties. Based on our review of the applicable law and jurisprudence, we agree with plaintiffs that prescription did not commence for the claims on the minor child's behalf before he was born.

The Louisiana Civil Code contains several articles that are pertinent to the accrual of Mr. DeFelice's claims on behalf of the minor child, Pascal. La. C.C. art. 3467 provides that prescription runs against all persons unless an exception is established by legislation. La. C.C. art. 25 provides that "[n]atural personality commences from the moment of live birth and terminates at death. " However, La. C.C. art. 26 states that "[a]n unborn child shall be considered as a natural person for whatever relates to its interests from the moment of conception."

The Louisiana Supreme Court has recognized that La. C.C. art. 26 applies only to "matters that advance the interests of the fetus." *Bailey*, 891 So.2d at 1280-81, *citing Wartelle v. Women's and Children's Hospital*, 97-744 (La. 12/2/97), 704 So.2d 778, 781. Thus, under Louisiana law, the "legal fiction" of natural personality that attaches to an unborn child from the moment of conception under La. C.C. art. 26 applies only when such application is for the benefit of the child or for the preservation of his interests. *Bailey*, 891 So.2d at 1281. Applying the "legal fiction" of natural personality to hold that prescription can commence before

a child's birth would certainly not inure to either the benefit of the child or the preservation of his interests.[1]

In the present case, in accordance with the applicable law and jurisprudence, we find that the claims filed by Mr. DeFelice on Pascal's behalf did not begin to accrue before Pascal was born in August of 2016; rather, they began to accrue at some point after his birth. Therefore, because plaintiffs' lawsuit was filed on July 24, 2017, within one year of Pascal's birth, the claims filed on behalf of Pascal are timely. Accordingly, we reverse the trial court's judgment granting ECS's exception of prescription as to the claims filed on Pascal's behalf.

*Plaintiffs' Individual Claims Related to Pascal's Health*

We next turn to the issue of when prescription commenced as to plaintiffs' individual claims that are related to Pascal's health issues. In *Bailey*, *supra*, the Louisiana Supreme Court addressed whether prescription on a mother's individual medical malpractice claim arising from her child's birth defects commenced at the same time as the minor child's claim, or prior thereto. The *Bailey* Court concluded that "the twin goals of consistency and predictability would be better served through holding that the claims accrue on the same date." *Bailey*, 891 So.2d at 1283. In reaching this conclusion, the Court noted that: 1) the mother was the plaintiff in both claims; 2) both claims alleged the same negligent acts (failure to warn); and 3) a finding that prescription commenced on the mother's individual claim at the same time as her claim on the child's behalf provided "the additional benefit of a clear, predictable benchmark, and relieves a pregnant plaintiff of the

---

[1] Although *Bailey* involves a medical malpractice claim and the present case does not, we find the analysis in *Bailey* to be applicable herein. We note that the Louisiana Supreme Court has held that La. R.S. 9:5628, the prescriptive provision for medical malpractice actions, "initially coincides with" the general prescriptive period for delictual actions set forth in La. C.C. art. 3492, and therefore the same principles generally apply to determine when the prescriptive period commences in a delictual action as in a medical malpractice action. See *Campo v. Correa*, 828 So.2d at 509.

burden of worrying about the need to pursue potential legal claims during a difficult pregnancy." *Id.*

Applying these considerations in the present case, we find that prescription on any individual claims of Mr. DeFelice and Ms. Hondroulis arising from Pascal's health issues commenced at the same time as the claims filed on Pascal's behalf. Mr. DeFelice and Ms. Hondroulis did not know prior to his birth that Pascal would have health issues related to mold exposure. Thus, prescription on plaintiffs' claims associated with Pascal's health issues could not have commenced prior to his birth. Accordingly, we find that to the extent Mr. DeFelice and Ms. Hondroulis have raised any individual claims for their damages arising from Pascal's health issues, such claims are not prescribed. We reverse the trial court's judgment granting ECS's exception of prescription as to any of the individual claims of Mr. DeFelice and Ms. Hondroulis arising from Pascal's health issues due to mold exposure.

*Plaintiffs' Individual Claims Unrelated to Pascal's Health*

In their petitions, plaintiffs seek to recover for property damage, loss of property value, loss of use of property, mental anguish, and emotional distress. Mr. DeFelice and Ms. Hondroulis do not specifically note any personal injuries they suffered themselves. However, but they allege that as a result of their reliance on ECS's negligent misrepresentation that the home was safe to occupy, "[p]laintiffs suffered damage to person and property," which could include individual personal injuries. They also generally allege property damage, but they do not specify any property damage caused by ECS's alleged negligent misrepresentation.

After plaintiffs' home flooded on June 10, 2016, a plumber came to the house and discovered there was mold present. As a result, Federated arranged for ECS to evaluate the damage. ECS inspectors came to plaintiffs' home on June 22,

2016. On that date, plaintiffs claim that ECS's representative verbally assured Mr. DeFelice that the house was safe to occupy. However, Mr. DeFelice admits that he took notes while the ECS inspectors were at the house and those notes reflect that ECS indicated some of the damage was "too severe to salvage the materials." Plaintiffs do not dispute that the only interaction between them and ECS was on June 22, 2016.

The very next day, June 23, 2016, Knight issued a report, explaining that mold was present and recommending that it be handled by a professional licensed in mold remediation. During his testimony at the hearing, Mr. DeFelice acknowledged that he read the Knight report, that he knew it recommended that a locally licensed mold remediation contractor be retained, and that the report indicated that failure to perform professional mold remediation could result in long term mold contamination in the house.

Generally, a trial court's factual findings on an exception of prescription, such as the date on which prescription begins to run, are reviewed on appeal under the manifest error standard. *Guillot v. Doughty*, 13-1348 (La. App. 1 Cir. 3/21/14), 142 So.3d 1034, 1041, *writ denied*, 14-824 (La. 6/13/14), 140 So.3d 1192. In this case, the trial court found that prescription began to run on June 23, 2016, when the results of the evaluation were set forth in the Knight report. We find no error in this determination as it relates to plaintiffs' individual claims that are unrelated to Pascal's health issues.

Plaintiffs' claims against ECS are primarily based on ECS's alleged misrepresentation on June 22, 2016 that the property was safe to occupy, and/or failure to properly warn of the hazards associated with staying in the house and being exposed to mold therein. Plaintiffs contend that they relied on ECS's misrepresentation, to their detriment. However, even if ECS made a negligent misrepresentation on June 22, 2016, or failed to properly warn plaintiffs of the

hazards of mold on that date, the Knight report recommending professional mold remediation was issued the next day. This report was more than sufficient to give a reasonable person actual or constructive knowledge that there were potential health risks if plaintiffs remained in the home and did not undertake professional mold remediation. Despite this information, plaintiffs chose to remain in the home.

Accordingly, we find that plaintiffs' individual personal or property claims unrelated to Pascal's health issues did, in fact, prescribe prior to the date plaintiffs filed this lawsuit. Thus, we affirm the trial court's judgment granting ECS's exception of prescription as to any individual personal or property claims of Mr. DeFelice and Ms. Hondroulis that are unrelated to Pascal's health issues.

## DECREE

For the foregoing reasons, we affirm the trial court's judgment insofar as it granted ECS's exception of prescription as to any individual claims of Mr. DeFelice and Ms. Hondroulis that do not arise from Pascal's health issues. We reverse the trial court's judgment granting the exception of prescription as to the claims asserted on Pascal's behalf and the individual claims of Mr. DeFelice and Ms. Hondroulis arising from Pascal's health issues. We also remand to the trial court for further proceedings consistent with this opinion.

### AFFIRMED IN PART; REVERSED IN PART; REMANDED

DAVID DEFELICE, INDIVIDUALLY
AND ON BEHALF OF HIS MINOR SON,
PASCAL HONDROULIS, AND KATIE
HONDROULIS

VERSUS

FEDERATED NATIONAL INSURANCE
COMPANY, ENVIRO-CLEAN
SERVICES, INC., AND KNIGHT
BUILDING INSPECTION SERVICES,
L.L.C.

NO. 18-CA-374

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## WINDHORST J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS

I respectfully concur in part, and dissent in part, with the majority's opinion for the following reasons.

I concur with the majority's finding that the claims filed on behalf of Pascal and Mr. DeFelice and Ms. Hondroulis' claims related to Pascal's health issues due to mold exposure are timely and that the trial court erred in granting ECS's exception of prescription as to these claims.

However, I respectfully disagree with the majority's conclusion that Mr. DeFelice and Ms. Hondroulis' individual personal injury and property damage claims, those claims unrelated to Pascal's health issues, prescribed prior to the date plaintiffs filed this lawsuit, and dissent for the reasons which follow.

Under Louisiana law, it is well-settled that "prescription cannot run against a cause of action that has not accrued or while that cause of action cannot be exercised." Bailey v. Khoury, 04-0620 (La. 1/20/05), 891 So.2d 1268, 1275-76, citing Wilkinson v. Wilkinson, 323 So.2d 120, 125 (La. 1975). The prescriptive period "commences to run from the day injury or damage is sustained" as follows:

> [La. C.C. art. 3492] is rooted in the recognition that a prescriptive period is a time limitation on the exercise of a right of action, and a right of action in tort comes into being only when the plaintiff's right

> to be free of illegal damage has been violated. When damages are not immediate, the action in damages thus is formed and begins to prescribe only when the tortious act actually produces damage and not on the day the act was committed.

Bailey, 891 So.2d at 1276, citing Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La. 1992); See also Tenorio v. Exxon Mobil Corp., 14-814 (La. App. 5 Cir. 4/15/15), 170 So.3d 269, 274, writ denied, 15-1145 (La. 9/18/15), 178 So.3d 149.

For a negligence cause of action to accrue, three elements are required: fault, causation and damages. Austin v. Abney Mills, Inc., 01-1598 (La. 9/4/02), 824 So.2d 1137, 1148. Thus, a plaintiff sustains damage, within the meaning of La. C.C. art. 3492, only when the damage has manifested itself with sufficient certainty to support accrual of a cause of action. Tenorio, 170 So.3d at 274, citing Cole v. Celotex Corp., 620 So.2d 1154 (La. 1993). The damage suffered must at least be actual and appreciable in quality-that is, determinable and not merely speculative. Id.

Further, liberative prescription of one year generally begins to run when the victim knows or should know of the damage, the delict and the relationship between them. Bailey, 891 So.2d at 1275. Stated another way, prescription "commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." Campo v. Correa, 01-2727 (La. 6/21/02), 828 So.2d 502, 510.[1]

As to their other individual claims, Mr. DeFelice and Ms. Hondroulis do not specify any personal injuries they suffered themselves, but they allege that as a result

---

[1] Although some of the prescription cases cited herein involved medical malpractice claims which this claim is not, the Louisiana Supreme Court has held that La. R.S. 9:5628, the medical malpractice prescription statute, "initially coincides with" the general prescriptive period for delictual actions set forth in La. C.C. art. 3492, and that the same principles apply to determine when the prescriptive period commences in a delictual action as in a medical malpractice action. Campo, 828 So.2d at 509. In Campo, the Louisiana Supreme Court stated that La. R.S. 9:5628 not only corresponds with the basic one year prescriptive period for delictual actions in La. C.C. art. 3492, it embodies the discovery rule delineated as the fourth category of contra non valentem, that is with the "single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect." Id.

of ECS's negligent misrepresentation that the home was safe, "[p]laintiffs suffered damage to person and property," which could include individual personal injuries. They also generally allege property damage but do not specify any property damage caused by ECS's alleged negligent misrepresentation.

It is well-established that liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. Born v. City of Slidell, 2015-0136 (La. 10/14/15), 180 So. 3d 1227, 1233. It cannot commence sooner, because the time given for prescription should be at a time during which the action can be exercised. Id. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd. Id. Considering these principles, as well as the law requiring that a plaintiff suffer damages before a negligence cause of action can accrue, I do not agree that Mr. DeFelice and Ms. Hondroulis' claims beyond those related to the Pascal's health issues have prescribed.

The majority concludes that the Knight report[2] was more than sufficient to give a reasonable person actual or constructive knowledge that there were potential health risks if plaintiffs remained in the home and did not undertake professional mold remediation. While this report informed appellants of mold damage and certain *risks* caused by exposure to mold, any alleged damages caused by ECS's alleged failure to adequately warn of the risks caused by mold exposure had not manifested. Without known and determinable damages, appellants' claim could not have accrued and they could not have had actual or constructive knowledge of that claim. Thus, based on the present facts, I do not agree that prescription commenced as to Mr. DeFelice and Ms. Hondroulis' individual claims upon receipt of the June 23, 2016 Knight report.

---

[2] The Knight report is the report issued by Knight Building Services, L.L.C. regarding its findings, after inspecting the property and collecting samples for mold testing.

Considering the foregoing, I would find that prescription as to Mr. DeFelice and Ms. Hondroulis' individual claims, *i.e.*, their other alleged unspecified and unknown damages, prescription could not have commenced much less prescribed before appellants filed this lawsuit on July 24, 2017. Based on this, I would find the trial court also erred in granting ECS's exception of prescription as to Mr. DeFelice and Ms. Hondroulis' individual claims and reverse the judgment related thereto.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 9, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
MARY E. LEGNON
INTERIM CLERK OF COURT

# 18-CA-374

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
SARAH M. KALIS (APPELLANT)            KASSIE LEE RICHBOURG (APPELLANT)

## MAILED

ELTON F. DUNCAN, III (APPELLEE)
KELLEY A. SEVIN (APPELLEE)
ATTORNEYS AT LAW
400 POYDRAS STREET
SUITE 1200
NEW ORLEANS, LA 70130

JONATHAN H. ADAMS (APPELLEE)
ANDRE' C. GAUDIN (APPELLEE)
ATTORNEYS AT LAW
5213 AIRLINE DRIVE
METAIRIE, LA 70001

GALEN M. HAIR (APPELLANT)
DAVID P. VICKNAIR (APPELLANT)
ATTORNEYS AT LAW
909 POYDRAS STREET
SUITE 1100
NEW ORLEANS, LA 70112

JAMES A. PRATHER (APPELLEE)
MARK E. SEAMSTER (APPELLEE)
C. BOWMAN FETZER, JR. (APPELLEE)
ATTORNEYS AT LAW
THREE SANCTUARY BOULEVARD
SUITE 301
MANDEVILLE, LA 70471